IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMAL STEPHEN CHEW,

    Plaintiff,

v.

OFFICER JACOB PLATT,
OFFICER JASON KRAFT,
OFFICER DWAYNE WESLEY, and
SERGEANT BRENDA LOWERY,

    Defendants.

Civil Action No.: JKB-20-3075

## MEMORANDUM OPINION

Defendants Sergeant Brenda Lowery and Officers Jacob Platt, Jason Kraft, and Dwayne Wesley[1] moved to dismiss the amended complaint, or alternatively, for summary judgment in their favor. ECF No. 15. Plaintiff Jamal Stephen Chew was granted an extension of time in which to respond to Defendants' motion through August 6, 2021. To date, Chew has not filed a response to the motion. No hearing is necessary to determine the matters pending. *See* Local Rule 105.6 (D. Md. 2021). For the reasons stated below, Defendants' motion will be granted.

### Background

**I.   Plaintiff's Allegations**

Chew's amended civil rights complaint concerns an alleged use of excessive force by correctional staff while he was a pretrial detainee at Cecil County Detention Center. He states that on October 10, 2020, when correctional officers pepper sprayed inmates on the Upper Red Tier, the spray passed through vents to the Lower Red Tier where he and other inmates diagnosed with

---

[1] The Clerk shall be directed to amend the docket to reflect Defendants' full and correct names as they appear in the caption.

COVID-19 were housed. ECF No. 3 at 2. Chew was having trouble breathing so the other inmates attempted to get correctional officers' attention to assist him. *Id.* at 3. He asserts that his legs felt numb and he lost consciousness. *Id.* When he regained consciousness, Officer Kraft was calling for medical attention and Chew informed him that he was having chest pains, difficulty breathing, and could not stand. *Id.*

According to Chew, it took medical staff an hour to respond to Officer Kraft's call along with backup to assist in helping Chew off the floor. *Id.* He asserts that when backup arrived he was in and out of consciousness. *Id.* Sergeant Lowery, while holding a mace cannister, ordered Chew to stand up and "stop faking." *Id.* Chew reiterated his symptoms to Lowery, insisting that he was not joking about his need for medical assistance. *Id.* He claims Lowery did not care and repeated her order to stand and threatened to spray him with mace. *Id.* Chew used his cell door to pull himself up, but Lowery told him he was moving too slowly and when he was almost up, she pulled him from behind, sprayed him with mace, and closed his leg in the cell door. *Id.* Chew contends that Lowery ordered the other officers to leave him, but that Officer Platt heard him continue to ask for help and returned to the cell. *Id.* Lowery again ordered Officer Platt to leave Chew in his cell. *Id.*

## II.   Defendants' Response

On October 10, 2020, Chew was observed by Defendant Kraft and Nurse Olga Parcells while they were conducting diabetic checks on inmates housed on Lower Red Tier; Chew requested to be seen by a nurse. Incident Report, ECF No. 17-1 at 2. Inmates on this tier had tested positive for the COVID-19 virus, including Chew. Test Results, ECF No. 15-7 at 2. Chew was lying on the floor of his cell, asserting that he could not stand and had recently fainted. Incident Report at 2. At approximately 3:59 a.m., Kraft opened Chew's cell door to let Nurse

2

Parcells enter and take Chew's vitals. *Id.*; Camera Footage, ECF No. 15-6.[2] Nurse Parcells was in Chew's cell for approximately three minutes; thereafter, Chew laid down on the floor with his head in the doorway. *Id.* Nurse Parcells returned after speaking to another inmate and talked to Chew for two more minutes, at which time Chew rolled over on his side. *Id.* He sat up in his cell and disappeared from the camera's view. *Id.* Nurse Parcells appeared to continue to engage with Chew and then he laid back down on the floor less than a minute later. *Id.* Nurse Parcells left Chew to attend to another inmate, meanwhile Chew remained on the floor, eventually sitting up and disappearing from view; he then lay back down with his head and shoulders outside of his cell. *Id.* Subsequently Chew rolled over and appeared to sneeze into toilet paper before laying down again. *Id.* Chew spoke to Nurse Parcells again and afterwards appeared to throw toilet paper into the dayroom and position the roll under his head. *Id.*

Defendants Lowery and Platt arrived at Chew's cell in response to Kraft's request for assistance because Chew refused orders to stand up. Incident Report at 2; Lowery Decl., ECF No. 15-8 ¶ 3; Supplemental Report, ECF No. 15-9 at 2. Lowery spoke to Chew, who was still lying partway out of his cell. Camera Footage; ECF No. 15-8 ¶ 6. Lowery attests that she asked Chew what was wrong, to which he responded that he spit up blood, although she did not observe any blood on Chew or in his cell. Lowery Decl. ¶ 6. Chew stated that he could not stand and needed assistance. *Id.* Lowery instructed him that if he wanted to be seen by a nurse he would have to sit at the dayroom table, but Chew repeated that he could not stand without assistance. *Id.* Lowery refused as she did not observe Chew to be in any physical distress. *Id.* Lowery then ordered Chew

---

[2] The Court ordered Defendants to submit a new copy of their Exhibit 4 DVD in a format compliant with the Electronic Filing Policy and Procedure Manual. ECF No. 23. Defendants provided a policy complaint copy of the DVD on January 3, 2022.

to stand and go to the dayroom table to have his vitals checked so that Nurse Parcells could finish "med pass" on the tier. *Id.*

Lowery avers that Chew yelled and cursed but did slowly stand up and walk towards the dayroom table. *Id.* ¶ 7; *see also* Camera Footage. Chew, instead of sitting at the dayroom table, proceeded to move toward Nurse Parcells complaining about a lack of medical treatment. Lowery Decl. ¶ 7. According to Lowery, other inmates on the tier were also shouting. *Id.* Lowery ordered Chew to return to his cell and when he did not comply used a "come along" method[3] to move him. *Id.* ¶ 8. Lowery avers that Chew tensed up and she dispensed a short burst of OC spray in his face. *Id.* Chew then fell to the floor and crawled into his cell while both Lowery and Platt held the back of his shirt and Platt is seen standing over Chew as his legs disappear into the cell. Camera Footage. Lowery instructed Chew multiple times to wash his face and rinse his eyes in the sink and secured his cell door. Lowery Decl. ¶ 8. Lowery advised him that medical staff would return after he rinsed his eyes and calmed down. *Id.* ¶ 9. The tier doors were propped open for fresh air; Lowery, Platt, Kraft, and Nurse Parcells left the tier. *Id.*; Camera Footage. Nurse Parcells returned a short time later and medically cleared Chew and the tier doors were closed. Lowery Decl. ¶ 9.

Chew filed a grievance about the incident on October 15, 2020, which was investigated and determined to be unfounded. Grievance Report, ECF No. 15-12 at 2-3. Lieutenant William Jolly and First Sergeant William Herold met with both Chew and Lowery due to a series of further complaints by Chew regarding Lowery's conduct. *See* Interview Mem., ECF No. 15-13. The memorandum documenting their interview with Lowery states she knew that "Chew consistently acts foolish and looks for attention." *Id.* at 3. Following an interview with Chew and review of

---

[3] Defendants do not provide a definition or description of the stated method. In the provided video, Lowery appears to grab Chew's arm and the back of his shirt. Camera Footage.

4

the video footage, Jolly and Herold found no wrongdoing because Chew was "not being cooperative in being seen by medical." *Id.*

## Standard of Review

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original). A court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same

time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. Motions styled in this manner implicate the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Id.* at 261.

Because defendants filed their motion as a motion to dismiss, or in the alternative, for summary judgment, Chew was on notice that the court could treat the motion as one for summary judgment and rule on that basis. Accordingly, the court will review the claims against defendants under the Rule 56(a) standard and will consider the exhibits filed in support of the dispositive motions.

The court informed Chew that he may file an opposition and advised him of the consequences of failing to do so. ECF No. 18. Chew, however, has not filed a response, and therefore he relies solely on his unverified amended complaint. ECF No. 3. Because Chew's amended complaint is unverified, its factual assertions may not be considered as evidence in

6

opposition to Defendants' motion. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); Fed. R. Civ. P. 56(c)(1)(A).

The court is mindful that Chew is a self-represented litigant. A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious claims. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But liberal construction does not mean a court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *See Weller v. Department of Social Services*, 901 F.2d 387, 391 (4th Cir.1990). A court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

## Discussion

"[E]xcessive force claims of pretrial detainees are governed by the Due Process Clause of the Fourteenth Amendment." *Riley v. Dorton*, 115 F.3d 1159, 1166 (4th Cir.1997) (en banc). To state a claim of excessive force in violation of his Fourteenth Amendment rights, Chew must, among other things, provide evidence establishing that "the use of force is deliberate – *i.e.*, purposeful or knowing." *Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015). This does not require him to establish Defendants' subjective state of mind. Rather, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396-97, *see also Dilworth v. Adams*, 841 F.3d 246, 255 (4th Cir. 2016). Objective reasonableness "turns on the 'facts and circumstances of each particular case.'" *Kingsley*, 576 U.S. at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). This court is obliged to "make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with 20/20 vision of hindsight." *Id.* at 397.

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically

7

to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34 (2010). Instead, the extent of injury incurred is one factor indicative of whether the force used was necessary in a particular situation. Thus, if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id.* at 38.

However, liability under § 1983 attaches only upon a showing of personal participation. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Here, Chew does not make any allegations that Officer Dwayne Wesley participated in the alleged assault. As Wesley is only named in the caption of the amended complaint, he shall be dismissed.

As to the remaining Defendants, the facts are not subject to dispute as Chew has not submitted any admissible evidence that contradicts the evidence submitted by Defendants. Defendant Lowery responded to the Lower Red Tier in response to Officer Kraft's request for assistance because Chew was refusing orders to stand up from laying in the doorway of his cell. Lowery engaged with Chew and he again refused multiple orders to stand up and proceed to the dayroom table to be assessed by Nurse Parcells. On Lowery's third instruction to stand and sit at the table, Chew yelled and cursed at Lowery but stood up and began walking towards the dayroom table.

However, instead of proceeding to sit down, he moved towards Nurse Parcells. As Chew did not comply with her instructions, Lowery grasped Chew's arm and the back of his shirt and

pulled him towards his cell. Chew tensed his body and Lowery dispersed a short burst of OC spray bringing Chew to the ground. Lowery and Platt both held onto Chew's shirt as he crawled into his cell.

Based on the record, the force used by Defendant Lowery was reasonable to maintain order. "Corrections officers act in a 'good faith effort to maintain or restore discipline' – that is, with a permissible motive — not only when they confront immediate risks to physical safety, but also when they attempt to 'preserve internal order' by compelling compliance with prison rules and procedures." *Brooks v. Johnson*, 924 F.3d 104, 113 (4th Cir. 2019) (quoting *Hudson*, 503 U.S. at 6-7). Chew had been ordered by both Kraft and Lowery multiple times to stand. Chew was able to stand and walk after verbally denying his ability to do so without assistance. Once standing, Chew, who was agitated and not handcuffed, continued to refuse orders and did not comply when Lowery attempted to physically guide him into compliance with her orders. Based on these circumstances and Chew's reaction when Lowery attempted to direct him physically back to his cell, it was not unreasonable for Lowery to disburse a short burst of OC spray to maintain order. Additionally, while Officers Kraft and Platt were both present during the incident, neither used any force against Chew.

Following the incident, Chew was examined and cleared by Nurse Parcells and did not report any injuries during his COVID-19 daily assessment later that day. *See* Medical Records, ECF No. 15-5 at 56-57. Chew also did not report any medical complaints between October 13 and October 15, 2020. *Id.* at 117-18. He submitted a sick call request on October 16, 2020, seeking medical attention due to being sprayed in the face. *Id.* at 2. Chew was seen on October 19 and 20 and reported that he felt well during both of those appointments. *Id.* at 118. On October 22, 2020,

9

Chew complained that more should have been done following the incident but did not report any injury. *Id.* at 119.

Based on the foregoing, Defendants have demonstrated that the force used against Chew was brief, measured, and reasonable under the circumstances. In the absence of any genuine issue of material fact as to whether the force used was excessive, Platt, Kraft, and Lowery are entitled to summary judgment in their favor.

## Conclusion

Defendants' motion to dismiss, or alternatively, for summary judgment is GRANTED. Defendant Dwayne Wesley is DISMISSED. Judgment is entered in favor of defendants Jacob Platt, Jason Kraft, and Brenda Lowery. A separate order follows.

Dated this 27 day of Jan., 2022.

FOR THE COURT:

James K. Bredar
Chief Judge